FILED

2006 Aug-16  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN  DIVISION

| | |
|---|---|
| **LARRY ALLEN HARVEY AND** ) | |
| **THERESA D. HARVEY,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO:** |
| ) | **5:06-CV-784-VEH** |
| **TIME INSURANCE COMPANY** ) | |
| **F/K/A FORTIS INSURANCE** ) | |
| **COMPANY, et al.,** ) | |
| ) | |
|     **Defendants.** ) | |

---

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Plaintiffs' Larry Allen Harvey and

Theresa D. Harvey Motion to Remand filed in response to Defendant Time Insurance

Company f/k/a Fortis Insurance Company's (hereinafter "TIC") removal to this court

based on Defendants' theory that Defendant Robert Fulton, the only non-diverse

defendant, was fraudulently joined by Plaintiffs in an effort to defeat diversity

jurisdiction (doc. 9).[1]

---

[1] Plaintiffs are citizens of Alabama.  (Pl. Complaint ¶ 1).  There are two named defendants in this action: TIC and Robert Fulton.  TIC is a corporation organized and existing pursuant to the laws of the State of Wisconsin, with its principal place of business also in Wisconsin.  (Df. Notice ¶ 9).  Fulton, working as an agent for TIC, is a citizen of Alabama.  (Df.

1

Plaintiffs' claims arise out of a medical insurance product sold to Plaintiffs, offered through and held by Defendant TIC.  Plaintiffs state that on or around April 1, 2002, and again on November 18, 2003, Defendant Fulton approached Plaintiffs about purchasing "group" health insurance from TIC.  (Pl. Complaint ¶ 6).  Plaintiffs allege that Defendant Fulton fraudulently represented to Plaintiffs that the health insurance coverage provided by TIC was "group" health insurance and that the premiums on the policy would be identical to those charged to other members of the "group."  (Pl. Complaint ¶ 6).  Plaintiffs further allege that Defendants fraudulently concealed the fact that the premium rates were not "group" rates and were instead being calculated based upon Plaintiffs' health and claim history at each policy renewal period.  (Pl. Complaint ¶¶ 8-9).  Plaintiffs assert that Plaintiff Larry Allen Harvey, relying on the representations of Fulton, was fraudulently induced into applying for insurance coverage with TIC in March, 2002.  (Pl. Complaint ¶ 11).  Plaintiff Harvey purchased health insurance coverage and was issued a certificate for health insurance with an effective date of April 1, 2002.  (Pl. Complaint ¶ 11).  Further, Plaintiffs allege that, based on the representations of Defendants, Plaintiff Theresa D. Harvey was added to the certificate in November, 2003, with December 1, 2003 as the effective date of her coverage.  (Pl. Complaint ¶ 11).

_____

Notice ¶ 10).

Defendants assert that Fulton, the only non-diverse defendant, was fraudulently joined in that Plaintiffs' claims against him are barred by the applicable (two-year) statute of limitations. (Df. Notice of Removal ¶¶ 13-14). Plaintiffs argue that their claims against Fulton are timely because they are tolled by the "savings clause" of Alabama Code § 6-2-3, in that they did not and should not have discovered the alleged fraud "until after responding to advertising that related to the insurance product made the basis of this suit, and meeting with counsel on or about September 29, 2005." (Pl. Motion p.15). Defendants contend that because Plaintiffs were in possession of documents, prior to 2004, that should have put them on notice as to the alleged fraud, they should be deemed to have discovered the alleged fraud against Fulton in April, 2002, when the insurance certificate was issued, or, at the latest, in December, 2003, when the certificate was amended to include Plaintiff Theresa D. Harvey. (Df. Memo p.15-16).

## Standard of Review

"Fraudulent joinder is a judicially created doctrine that provides an exemption to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Under Eleventh Circuit precedent, joinder is fraudulent in three situations: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident defendant; (2) when there is outright fraud

in the plaintiff's pleading of jurisdictional issue; and (3) when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. *Id. See also Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993); *Tapscott v. MS Dealer Services Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled as conflicting with prior panel decision on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). If any of these situations are present, the nondiverse defendant has been fraudulently joined and its citizenship should be ignored for purposes of determining jurisdiction. *Id.*

"In evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by the parties." *Id.* at 1380. "While the proceeding appropriate for resolving a claim for fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b) . . . the jurisdictional inquiry must not subsume substantive determination." *Crowe v.*

4

*Coleman*, 113 F.3d 1536, 1538 (11ᵗʰ Cir. 1997) (internal citations and marks omitted).

A district court must resolve all questions of fact in favor of the plaintiff; however, there must be some dispute of fact before the court can resolve that fact in the plaintiff's favor. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11ᵗʰ Cir. 2005). When a defendant's affidavits are not disputed by the plaintiff, the court "cannot then resolve the facts in the [plaintiff's] favor based solely on the unsupported allegations in the Plaintiff's complaint." *Id.*

A federal court must be certain of its jurisdiction before "embarking upon a safari in search of a judgment on the merits." *Crowe*, 113 F.3d at 1538. A "district court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously fraudulently or frivolous claims." *Id.* at 1542.

## Analysis

In Count One of their Complaint, Plaintiffs assert a claim for Fraud-Misrepresentation against Defendants. Under Alabama law, "[t]he elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the representation." *Ex Parte Michelin N. Am., Inc.*, 795 So. 2d 674, 678-79 (Ala. 2001).

In Count One Plaintiffs allege:

Defendants fraudulently represented to the Plaintiffs that the Plaintiffs

were purchasing "group" health insurance coverage and the premiums on said policy would be the same as those charged to other members of the group. As a result of Defendants' fraudulent misrepresentations the Plaintiffs were induced into purchasing health insurance coverage that will lapse unless premiums are paid at increasingly high rates, due to Defendants' own actions. At all times material hereto, Defendants fraudulently misrepresented and failed to disclose the true reason for premium increases and at no time did Defendants advise Plaintiffs that the reason for premium increases was due to Defendants calculating premium increases based on Plaintiffs' health and personal claim experience. The representations made by Defendants were false and Defendants knew they were false. Plaintiffs relied upon the false representations and purchased the policy of insurance. As a proximate consequence of Defendants' fraud, Plaintiffs were injured and damaged as follows: Plaintiffs paid premiums on a health insurance policy that was not as represented; Plaintiffs lost the value of their premium payments; Plaintiffs lost interest on premium payments; Plaintiffs do not have the insurance policy that was represented; Plaintiffs will be required to pay increased premium payments in the future or lose insurance coverage; Plaintiffs have suffered mental anguish and emotional distress and will continue to do so; Plaintiffs have been otherwise injured and damaged.

(Pl. Complaint ¶¶ 20-26).

At least with regard to Count One, Plaintiffs have not asserted obviously fraudulent or frivolous claims against the individual Defendants and thus there exists the possibility of proving a cause of action against Defendant Fulton.

Defendants contend that the fraud-based claims against Defendant Fulton are time-barred by the applicable two-year statute of limitations. *See* Ala. Code § 6-2-3 (1975) (stating that in fraud-based cases, the statute of limitations begins to accrue

when the aggrieved party discovers the fact constituting the fraud, after which time the party will have two years to bring the claim).  Thus, Defendants argue that there is no possibility of Plaintiffs recovering against Fulton.

"If the only claims against a resident defendant are barred by the statute of limitations, then there is 'no possibility the plaintiff can establish a cause of action against the resident defendant.'  In such a situation, the resident defendant is deemed to be fraudulently joined." *Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 2d 1319, 1325 (M.D. Ala. 2003) (quoting *Bullock v. United Benefit Ins. Co.*, 165 F. Supp. 2d 1255, 1258 (M.D. Ala. 2001).  Under Alabama law, fraud claims accrue upon the earlier of: (1) actual discovery of the alleged fraud; or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms.  *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997).  The *Foremost* rule applies in cases of fraudulent misrepresentation, fraudulent suppression and negligent misrepresentation. *Owens*, 289 F. Supp. 2d at 1326 n.10.  "The limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to discovery of the fraud.'"  Under Alabama law, "[f]raud is deemed to have been discovered when it ought to have been discovered." *Johnson v. Life Ins. Co. of Ala.*, 581 So. 2d 438, 442

7

(Ala. 1991).

The question as to when Plaintiffs discovered or should have discovered the fraud for statute of limitations purposes is generally one for a jury. *See Ex Parte Am. Gen. Fin., Inc.*, 795 So. 2d 685, 689 (Ala. 2000). There are times, however, "'when this question is removed from the purview of the jury' and can be decided as a matter of law." *Id.* The question as to when a plaintiff should have discovered the fraud should be taken away from a jury and decided as a matter of law only in cases where the plaintiff had actual knowledge of facts that would put a reasonable person on notice as to the existence of potential fraud. *See Id.* "'[I]t is the knowledge of such *facts* that would have alerted a reasonable person to the existence of a potential fraud, and not actual knowledge of the fraud itself, that determines whether the question of the tolling of the statute of limitations period in a fraud case . . . can be decided as a matter of law." *Id.* (quoting *McGowan v. Chrysler Corp.*, 631 So. 2d 842, 845 (Ala. 1993)) (Emphasis in original). "'[F]raud is discoverable as a matter of law . . . when one receives documents that would put one on such notice that the fraud reasonably should be discovered.'" *Id.* at 689-90 (quoting *Kelly v. Conn. Mut. Life Ins. Co.*, 628 So. 2d 454, 458 (Ala. 1993).

Defendants claim that Plaintiffs received documents in connection with their applications and issuance of insurance that, with the exercise of ordinary care, should

have alerted Plaintiffs to the information allegedly misrepresented or concealed.  (Df. Memo p.14).  If this is the case, the statute of limitations would have started to run, at the latest, in December, 2003, when the insurance certificate was amended to include Plaintiff Theresa D. Harvey.  Thus, Plaintiffs' fraud-based claims against Defendant Fulton would be time-barred in that their Complaint was not filed until March, 2006.  (Df. Memo p.16).  If, on the other hand, it is determined that Plaintiffs did not discover the fraud until meeting with their attorney on September 29, 2005, then the statute of limitations is not at issue in this case as the instant action was filed less than two years from that date.

Plaintiffs contend that Defendants engaged in a deliberate course of conduct through which Plaintiffs did not and could not have discovered "Defendants' deceptive sales and renewal tactics or scheme of fraud and concealment." (Pl. Motion p.16).  Plaintiffs claim that it was not until after they responded to "advertising that related to the insurance product made the basis of this suit and meeting with counsel on or about September 29, 2005," that they knew or had reason to know that "their premiums were not based on the claims of a group, that their renewal premiums were based on individual claims experience, and that the policy was therefore not a 'group policy,' as represented."  (Pl. Motion p.15).

There are limitations to the *Foremost* rule.  An individual is not capable of

discovering a fraud or misrepresentation by reading and understanding the terms of documents or a contract if he or she is illiterate or if the documents "'are vague or ... do not reasonably indicate that a fraud has occurred based on the circumstances of [the] case.'"  *Am. Gen. Fin., Inc.*, 795 So. 2d at 690; *see also Fowler v. Provident Life and Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1248 (N.D. Ala. 2003).  While Plaintiffs do not expressly allege ambiguity in the insurance documents they received,[2] there is a question as to whether the documents themselves would have put Plaintiffs on notice of the alleged fraud.  (Pl. Motion p.16-17).

Plaintiff Larry Allen Harvey's application for insurance states that he applied for medical insurance for individuals and families.  The medical insurance certificate states that a "Master Group Policy" was issued to the "association."[3]  The other documents of record make several references to a "family" type of insurance policy.[4] Plaintiff Larry Allen Harvey was issued a Certificate Amendment Rider on December

---

[2] Plaintiffs' Motion to Remand states that "the documents presented to the Plaintiffs by the defendants afforded <u>no</u> opportunity for the plaintiffs to ascertain the valuable and material facts, upon which they relied to their detriment and damage, had been misrepresented, concealed, and/or suppressed." (Pl. Motion p.16).

[3] Found in Evidentiary Submissions in Support of Plaintiffs' Motion to Remand, Medical Certificate p.1 (hereinafter "Medical Certificate").

[4] Found in  Evidentiary Submissions in Support of Plaintiffs' Motion to Remand, Certificate Amendment Rider - Addition of Dependent; Application for Insurance; Letter from TIC pertaining to premium reduction options.

3, 2003, to reflect the addition of his wife to the insurance coverage which states "Family" as the type of insurance plan.

A rider attached to Plaintiffs' insurance certificate contains a paragraph as to how premium payments are to be calculated that states:

> [y]our premium may change on renewal because a new rate table applies, due to claims experience within Your Class of coverage, due to changes in policyholder expense, when Your age increases, family members are added or deleted, coverage is increased or decreased, if you move to a different ZIP code, or for any other reason permitted by law.

*See* Rider B021.

This provision was cited by Plaintiffs in their Motion to Remand and Defendants in their Memorandum in Opposition to Plaintiffs' Motion. Plaintiffs highlight the language, "due to claims experience within Your Class of coverage" as written evidence of Defendants' misrepresentations. (Pl. Motion p.16). Defendants cite the same paragraph, but omit the portion highlighted by Plaintiffs, as evidence that Plaintiffs had information that should have alerted them as to the bases upon which their premiums would be calculated. (Df. Memo p.15-16). Specifically, Defendants claim that, "the Certificate informed Plaintiffs that their premiums 'may change because a new rate table applies,' or when 'your age increases, family members are added or deleted, coverage is increased or decreased, or if you move to

11

a different zip code.'  Defendants argue that, "had Plaintiffs taken the time to read their Certificate, they would have discovered exactly how TIC was going to calculate their premiums."  (Df. Brief p.15-16).

According to the documents in evidence, there are only three people covered under the insurance: the two Plaintiffs and their son.  The insurance documents indicate that this is "family" coverage.  Additionally, a rider attached to the insurance certificate states that premiums are to be calculated based on changes in "Your age ... policyholder expense," etc.  The statement highlighted by Plaintiffs that "premiums may change on renewal . . . due to claims experience within Your Class of coverage . . ." possibly refers to Plaintiffs' policy *type*, which is indicated  as "family" insurance; on the other hand, Plaintiffs interpret the rider's language to be proof that the policy was represented to Plaintiffs by Defendants as a "group" policy.[5]

The above cited paragraph regarding the method by which premiums are calculated, the repeated references to the type of insurance coverage as "family" coverage, and the terms "group" and "association" in one of the insurance documents

---

[5] Also in this rider, "Class" is defined as "[a]ny common personal characteristic or shared product features, except an individual's claim experience shall only be considered collectively with other individuals' claim experience."  This definition does not resolve any ambiguity.  It seems that Plaintiffs purchased a type of insurance in which premiums are calculated in part as if the insurance was "individual" insurance and in part as if it was "group" insurance.  *See* Rider B021.

evidence ambiguity or vagueness in the insurance certificate.  The paragraph as to the calculation of premiums and the definition of "Class" (*see* n.6) could be construed in a manner such that they would have, at least, provoked an inquiry in the mind of a reasonable person that could have alerted him or her to the existence of a potential fraud.  Conversely, this paragraph could also be interpreted as a vague or general statement that would not necessarily put Plaintiffs on notice that their premiums were being calculated based on individual claims rather than based on the claims of the group.  It is entirely reasonable that a court could conclude that the documents supplied to Plaintiffs by Defendants "'are vague or . . . do not reasonably indicate that a fraud has occurred based on the circumstances of [the] case.'"  *Am. Gen. Fin., Inc.*, 795 So. 2d at 690.  In short, it is unclear as to whether or not Plaintiffs were put on notice of any potential fraud.  Consequently, it is far from certain that the statute of limitations is: (1) applicable in this case; or (2) if applicable, that it should not be tolled.

## <u>Conclusion</u>

The court must "construe removal jurisdiction narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party ...."  *Pacheco de Perez*, 139 F.3d at 1373 (citing *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996)).  Following the reasoning behind the *Pacheco de Perez* directive,

where a federal court must reach a determination, under Alabama law, as to whether a statute of limitations should be tolled, absent overwhelming clarity one way or another, such a decision is properly deferred to a state court and the existence, or lack thereof, of federal jurisdiction must be decided in favor of the non-removing party. The case at hand presents such an instance.  It is unclear, based on the papers submitted to this court, whether or not Plaintiffs should have been put on notice as to any potential fraud.  Defendants' basis for their fraudulent joinder argument rests upon the premise that Plaintiffs were placed on such notice; accordingly, Defendants have failed to satisfy their burden of demonstrating federal jurisdiction on removal from state court.  This court's inquiry into fraudulent joinder must end once a plaintiff, as in the instant case, demonstrates that he or she can maintain a possible cause of action against a non-diverse defendant.  As such, this court lacks jurisdiction over this case, and this action shall be remanded to the appropriate state court for further adjudication.  A separate Final Order will be entered consistent with this Memorandum Opinion.

      **DONE** and **ORDERED** this 16th day of August, 2006.

_VEHopkins_

**VIRGINIA EMERSON HOPKINS**
United States District Judge